UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

LARRY KEITH MILLER
and MARY ELLEN MILLER,

     Debtors.
_____/

Case No. 11-21722-dob
Chapter 7 Proceeding
Hon. Daniel S. Opperman

Opinion Regarding Chapter 7 Trustee, Daniel Himmelspach's, Motion for Approval of
Settlement with mBank and Debtors' Motion to Compel Trustee to Abandon Property of Estate

Introduction

The Trustee, Daniel Himmelspach, sold the Debtors' residence at 906 Woodcrest Drive, Gaylord, Michigan (the "Woodcrest Property") for $149,900.00, and after payment of closing costs and prior liens, received $77,464.04. mBank claims these proceeds by virtue of a mortgage dated September 19, 2005, and recorded on September 21, 2005, at Liber 1068, Page 1 - 11 with the Otsego County Register of Deeds. This mortgage contained the proper legal description for the Woodcrest Property. The Trustee disputes the mortgage interest of mBank, and after negotiation with mBank, seeks approval of this Court to allow mBank to receive 50% of the $77,464.04, and for the bankruptcy estate to retain the other 50% as a surcharge against the mortgage interest of mBank. The Debtors, Larry and Mary Miller, object to this treatment of the proceeds to the extent that their exemption of $20,605.00 in the proceeds would be eliminated. The Debtors seek abandonment by the Trustee of the $20,605.00 exemption and the Trustee and mBank object to this request. The Court makes the following findings of fact and conclusions of law as to the Trustee's Motion and the Debtors' Motion based upon the pleadings filed in this bankruptcy estate and Exhibits 1, 2, and 3 admitted into evidence on August 15, 2013. The Court also admitted and

1

reviewed Exhibit 4 on August 15, 2013, but did not consider Exhibit 4 for purposes of making its findings of fact.

Findings of Fact

Larry Miller was the president of Triple M Tire, Inc. ("Triple M"), a business located in Gaylord, Michigan supplying tire services across northeastern Michigan. mBank lent money to Triple M to allow Triple M to continue business operations.

On September 19, 2005, Mr. Miller, as president of Triple M, signed a Universal Note in the amount of $100,000.00 identifying Triple M as the borrower and mBank as the lender. The stated purpose of this note was to term out a single pay note for working capital. The security for the Universal Note listed various security agreements, personal guarantees, and real estate mortgages on property owned by either Triple M or the Debtors. Attached to mBank's Proof of Claim 15-1 filed with this Court is a copy of a Guaranty dated September 19, 2005, signed by the Debtors, which recites that the Debtors guaranteed an unlimited amount of principal advanced by mBank to Triple M and secured that Guaranty with a real estate mortgage dated September 19, 2005. Also attached to Proof of Claim 15-1 and various pleadings filed in this case is a copy of a mortgage dated September 19, 2005, and recorded September 21, 2005, at Liber 1068, Page 1 - 11, for the Otsego County Register of Deeds (Exhibit 1). The Mortgage recites that the borrowers are Larry Miller and Mary E. Miller, husband and wife, the lender as mBank, and that the note in question was one signed by the borrower in the amount of $100,000.00. Per the affidavit of Nikki Tryan (Exhibit 3), the September 19, 2005, note was designated as Loan No. XXXX0003. This loan was later designated as Loan No. XXXX8103 when mBank converted its computer system.

On June 29, 2006, the Debtors signed a second Guaranty reiterating the unlimited nature of

the principal amount guaranteed by the Debtors to mBank and also restating that the Guaranty was secured by seven separate real estate parcels, one of which included the Woodcrest Property. A few years later, on January 2, 2009, the September 19, 2005, Universal Note was consolidated with other obligations owed by Triple M. These obligations totaled $728,167.43, and the consolidation of those obligations in one note was evidenced by a Universal Note dated January 20, 2012, bearing a Loan No. XXXX1010. The January 2009 note states the purpose as a consolidation of existing mBank notes into one payment and also states the security for this note to include the September 19, 2005, mortgage on the Woodcrest Property. Both the Universal Note and the collateral exhibit "A" are signed by Larry Miller as president of Triple M and Larry and Mary Miller as individuals.

Despite their best efforts, the Debtors could not overcome the financial difficulties experienced by Triple M. Triple M filed a bankruptcy petition with this Court, and the individual Debtors filed a petition seeking relief under Chapter 7 of the Bankruptcy Code with this Court on May 9, 2011. The Debtors properly disclosed the Woodcrest Property and stated the value of it at $182,600.00. In Schedule C, the Debtors claim an exemption of $20,605.00. The Trustee initially listed the Woodcrest Property for $249,000.00, but was forced to lower the listing price until the property was sold on July 19, 2013, for $149,900.00. At closing, normal and customary closing costs were paid, as well as $56,784.64 to Citizens Bank which held a superior mortgage interest on the property. The remaining funds in the amount of $77,464.04 were given to the Trustee subject to later determination as to the interests of the estate and mBank in the proceeds.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters

3

concerning the administration of the estate) and (B) (allowance or disallowance of claims against the estate or exemptions from property of the estate).

All issues before the Court arise out of Title 11 of the United States Code and do not involve issues which limit this Court's jurisdiction as raised in the cases of *Stern v. Marshall*, 131 S. Ct. 2594 (2011) and later by the Sixth Circuit Court of Appeals in *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

Analysis

Neither mBank or the Debtors object to the Trustee's sale of the Woodcrest Property for $149,900.00 or the payment of the closing costs and the lien to Citizens Bank. The Debtors do not object to mBank receiving money from the sale of the Woodcrest Property, but do object to the extent that their exemption of $20,605.00 is imperiled by payment of money to mBank with the concept that mBank will allow a surcharge of up to $38,732.02 (50% of $77,464.04). Given this, the Court need not apply the usual standards of review for settlements as mandated by *TMT Trailer Ferry v. Anderson*, 390 U.S. 414 (1968), *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988), and *In re Dow Corning Corp.*, 198 B.R. 214, 221-22 (Bankr. E.D. Mich. 1996).

Paradoxically, this Court must analyze the respective rights of mBank in the Woodcrest Property against Debtors' rights to exempt the Woodcrest Property. In doing so, the Court will need to analyze this case much as it would an application to approve a settlement and, if need be, determine the rights of mBank.

In this case, the initial documents signed in September 2005 sufficiently created a debt of $100,000.00 owed by Triple M to mBank that was guaranteed by the Debtors. In turn, the Debtors

4

secured that guaranteed obligation with a mortgage on the Woodcrest Property. The weakness in the documents prepared by mBank focus on the language in the Mortgage that identifies the borrowers as Larry and Mary Miller and by reference the note to mean a promissory note signed by the borrowers (Larry and Mary Miller) dated September 19, 2005, setting regular periodic payments and to pay the obligation in full by September 19, 2010. The Mortgage continued, however, to include a recitation that the security instrument secured to mBank the repayment of the loan, that is the debt evidenced by the note, as well as any renewals, extensions, and modifications of the note. Although not perfect, the Universal Note, Mortgage, and Guaranty are sufficiently linked to put any party on notice of the nature of the obligation owed by Triple M, guaranteed by the Debtors, and secured by the Woodcrest Property. Less than one year later on June 29, 2006, the Debtors signed another Guaranty which recited the same unlimited principal amount of debt in identifying seven parcels, the first of which included the Woodcrest Property as security for the Guaranty. Subsequently, in January 2009, prior to the September 19, 2010, date set in the Mortgage, the Debtors and Triple M consolidated the September 19, 2005, note with other obligations to arrive at a total of $728,167.43. The stated purpose of the January 20, 2009, Universal Note was to consolidate the loans into one payment with a further identification that the property securing the consolidated loan included seven real estate parcels and other items of personal property. Again, mBank consolidated various obligations owed to it by Triple M and the Debtors, an event allowed by the Mortgage within the "all renewals, extensions, and modifications of the note" language contained in the mortgage.

The Trustee argues that this language is insufficient to allow mBank to receive money from the proceeds of the sale of the Woodcrest Property and threatened to take the necessary steps to

avoid the mortgage granted by the Debtors to mBank. Before the Trustee initiated an adversary proceeding to that end, however, the Trustee and mBank were able to reach a resolution which often happens in cases involving an alleged basis to avoid a transaction. In those situations, the Debtors cannot claim an exemption because of 11 U.S.C. § 522(g).

Here, the Debtors argue that they never voluntarily gave an interest in the Woodcrest Property for the reason that any claimed interest in the Woodcrest Property expired when mBank consolidated the September 2005 Universal Note in January 2009. The Court finds this argument to be misplaced because the Debtors signed documents in 2005, 2006, and 2009, clearly evidencing an intent to create a mortgage interest in favor of mBank. While the Debtors are correct that the methods used by mBank were not perfect, mBank did sufficiently create documents that allow the mortgage interest granted to it in 2005 to continue to the present. The Court therefore concludes that mBank has a valid mortgage interest in the Woodcrest Property and that the Debtors voluntarily created that interest in 2005 and reaffirmed that creation in 2006 and 2009. Accordingly, 11 U.S.C. § 522(g) prohibits the Debtors from claiming an exemption on property avoided by the Trustee.

Alternatively, the Court finds that the surcharge allowed by mBank cannot be claimed as an exemption. *Baldridge v. Ellman (In re Baldridge),* No. 12-14612, 2013 W.L. 1759365 (E.D. Mich. Apr. 24, 2013). In *Baldridge*, the trustee was able to sell property secured to Citizens Bank and Fifth Third Bank for $503,000.00, an amount sufficient to pay the entire Citizens Bank obligation, but not the $512,861.20 owed to Fifth Third Bank. Unlike the debtors in *Baldridge*, however, in this case the Debtors properly claimed an exemption of $20,605.00. That being the case, in *Baldridge* the Court held that the "carve-out" was appropriate to pay the trustee's costs and that the debtors could not claim an exemption if there was no equity in the property. As stated by the *Baldridge*

6

Court, the carve-out did not transform into home equity because it was paid to the estate. *Id.* at *2. Likewise, in this case, the ability of the Trustee to cause mBank to question its interest does not create an exemption for the Debtors. In this case, no equity existed in the Woodcrest Property unless the Trustee was able to sell it for substantially more than the $149,900.00 sale price.

While the Court could envision circumstances in which the surcharge was improperly negotiated to defeat an otherwise valid claim of exemption, the facts in this case do not warrant such a finding. A review of the docket in this case indicates that the Trustee has attempted for approximately two years to sell the Woodcrest Property and took appropriate actions to reduce the listing price to attract a buyer. During this time, the Trustee incurred certain risks and also undertook efforts to create equity for the Debtors, as well as the estate. Stated differently, if the Trustee was successful in procuring a buyer for the original $249,000.00 listing price, the Debtors' exemption of $20,605.00 would have been paid. That did not occur in this case, and there was no evidence that the Trustee or mBank colluded to defeat the Debtors' exemptions.

Accordingly, with these facts, the Court concludes that the Trustee's Motion for Approval of Settlement with mBank is granted. The Court denies the Debtors' Motion to Compel Trustee to Abandon Property of Estate and also overrules any objection that the Debtors may have to the settlement of the claims the bankruptcy estate has against mBank. Counsel for the Trustee is directed to draft an Order consistent with this Opinion.

Not for Publication.

**Signed on October 04, 2013**

                                        **/s/ Daniel S. Opperman**
                                  **Daniel S. Opperman**
                                  **United States Bankruptcy Judge**